## Henri Vincendeau v. People of the State of Illinois.

### Gen. No. 11,659.

1. VERDICT—*when set aside by Appellate Court.* It is only when an appellate tribunal is able to say, from a careful consideration of the whole testimony, that there is clearly a reasonable and well-founded doubt of the guilt of the accused, that it will interpose on the ground that the evidence does not support the verdict, or that the verdict is palpably contrary to the decided weight of the evidence.

2. AMENDED TRANSCRIPT—*when, cures technical defect.* An amended transcript will be looked to by the Appellate Court to meet a technical objection to the indictment, to the effect that the name of the foreman endorsed upon the indictment was that of a man not a member of the grand jury which found and returned the same.

3. VARIANCE—*clerical errors do not constitute.* Where it appears in a criminal case that the name of the defendant has been misspelled, a reversal will not follow where such misspelling is a mere clerical error.

4. VARIANCE—*what does not constitute.* The fact that the indict-

ment charges a sale to an individual and the proof shows a sale to a person who may or may not have been acting as an agent, is not material and does not constitute a variance.

5. HEARSAY—*when competent.* The proof of the names of the persons composing a foreign partnership may be made by evidence of reputation.

6. BILL OF COMPLAINT—*when, incompetent as evidence.* Where a bill of complaint is offered for the purpose of establishing the name of a person connected with a criminal prosecution, it is properly excluded in the absence of proof of identity and authority.

7. EVIDENCE—*when erroneous exclusion of, will not reverse.* The erroneous exclusion of evidence will not reverse where it appears that the judgment is clearly right and the substantial merits of the cause have not been affected by the ruling.

8. MOTION FOR A NEW TRIAL—*right as to time to prepare for.* In theory, the trial of a cause is continuous up to and including the judgment, and in the absence of prejudice appearing it is not error for the court to refuse to allow time to counsel for the accused to prepare for a motion for a new trial.

Criminal prosecution. Error to the Criminal Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 13, 1905. Rehearing denied March 27, 1905.

HOWARD AMES and ELIJAH N. ZOLINE, for plaintiff in error.

CHARLES S. DENEEN, State's Attorney, for defendant in error; ROBERT N. HOLT, of counsel.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The plaintiff in error, who will hereinafter be designated as the defendant, was indicted, tried and found guilty of unlawfully selling certain bottles of wine upon each of which was a counterfeit and imitation label and trade-mark theretofore adopted, used and registered by G. H. Mumm & Co. The defendant was sentenced to be confined in the common jail for and during the term of three months, and to pay all the costs of the proceedings. From such judgment the present writ of error was sued out.

The indictment is based upon chapter 140 Hurd's Revised Statutes 1903.

The evidence tends to prove that the defendant was a wholesale dealer in wines and liquors in the city of Chicago, and had been in the wine and liquor business for forty years. The Otto Schmidt Wine· Company, also of Chicago, handled the wines of G. H. Mumm & Co. in that city. One° grade of the champagne wines of G. H. Mumm & Co. is known as "Mumm's Extra Dry," which sold regularly at $31 or $32 per case. Schmidt, the president of the Otto Schmidt Wine Co., learned that some one was selling that brand of wine at $22 per case. He called upon the defendant and offered to buy wines of that brand at the last named price, but defendant said he did not handle such goods. The next day a stranger came to Schmidt and told him the defendant could sell him such goods at $22 per case. The stranger· then called up a number on the telephone, and, after getting an answer, turned the instrument over to Schmidt. The latter recognized the voice of the defendant, and said to him, "Send me five cases of wine for $110, and if they are satisfactory I will take ten cases more;" and the defendant replied, "All right, I will send the five cases." That the five cases came the next day billed to the Otto Schmidt Wine Co., and were paid for by the check of that company. That this purchase was made by Schmidt for his company, but not in its name. That upon the receipt for the check was written: "Must I fill the order for the ten cases quarts, as given by telephone? Please let me know by re-telephone. If you have time to call, will be glad to see you." That shortly thereafter Schmidt and his son-in-law, Houseman, called on defendant, and Schmidt swore that the latter then stated to them that he took Alabama and Georgia wine, mixed them half and half, put them in champagne bottles, and had a boy buy corks taken from original Mumm bottles; that he had imitation labels printed in Chicago, and procured imitation caps in New York; and that the bottles as thus put up could not be distinguished from the real

Mumm champagne bottles. Houseman corroborated Schmidt as to this conversation in every particular. The defendant denied this conversation *in toto*. Pierre Balise, who was in the employ of the defendant, and a Mrs. Schott, who say they were in the defendant's living room next back of his store, the board partition between the rooms being only seven feet high, and heard what was said between Schmidt, Houseman and the defendant; that they heard all of that conversation, and that neither of them heard any such conversation as is hereinbefore set down. It clearly appears that the wines contained in the bottles so sold by the defendant were not Mumm's genuine champagne. It is also proven that the defendant, who had been in the wine and liquor business for forty years, sold to a stranger at $22 per case a well-known brand of wine which, if genuine, had a fixed market price of $31 to $32 per case.

The defendant testified that he took the five cases he sold to Schmidt from a Mr. Schott as security for a loan of $100; that he never saw Schmidt until after these five cases were sold; that they were sold by an agent of the Great Western Wine Co. for a commission of ten per cent; that while the agent was at the place of business of the Otto Schmidt Wine Co., some one called the defendant up on the telephone, said he was Otto Schmidt, and that if the five cases were all right he would want ten cases of quarts; and defendant having in mind ten other cases which he had bought of Schott, said he could deliver them, but when he came to examine those cases he found the bottles were empty; and that up to the sale of and payment for said five cases he believed the wines in them were genuine.

The first contention of the defendant is that the verdict is contrary to the evidence. The testimony as to the sale and delivery of these wines and as to what was said and done between the parties thereto before and after the sale, is in direct conflict. It was therefore the special function and duty of the jury to determine on which side of the controversy the truth was. The conclusion of the jury in this

regard depended largely upon the credit to be given to the several witnesses. The jury, as did the presiding judge, saw and heard them testify. The question of the credibility of witnesses is a matter so exclusively within the province of the jury that great weight should be given to their finding; and it is only when an appellate tribunal is able to say, from a careful consideration of the whole testimony, that there is clearly a reasonable and well-founded doubt of the guilt of the accused, that it will interpose on the ground that the evidence does not support the verdict, or that the verdict is palpably contrary to the decided weight of the evidence. Gainey v. People, 97 Ill. 275; Steffy v. People, 130 Ill. 99; Lathrop v. People, 197 Ill. 174; McCracken v. People, 209 Ill. 220. From a careful examination of the record, we are of the opinion that the verdict is fully sustained by evidence.

The next contention of the defendant is that the indictment is a nullity, because the lawfully appointed foreman of the December, 1903, grand jury, which it is alleged returned this indictment, was "James W. Nye;" and that such grand jury did not have in its number any man by the name of "Arthur Burnam," whose name is indorsed on the indictment as foreman. The amended transcript filed herein shows that this indictment was returned by the November, 1903, grand jury, and that the Court duly appointed Arthur Burnam as its foreman.

The indictment names the defendant "Vincendeau," while in many places in the original transcript his name is given as "Vincendean." The defendant points out this variance and declares it to be ground for reversal. The amended transcript shows that this last spelling is a clerical error, and that in all instances the record gives the name of the defendant as "Vincendeau."

The defendant further argues that as the indictment charges a sale to "Otto Schmidt," while the evidence shows that the sale was made to the "Otto Schmidt Co.," there is a fatal variance. It is a sufficient answer to this contention to say the evidence tends strongly to prove that the

sale was made to Otto Schmidt; and it is immaterial whether Otto Schmidt was then acting for himself or for an undisclosed principal.

The defendant also says that the indictment names one of the firm of G. H. Mumm & Co. as "Matt" Von Guaita, while the evidence is that his name is *"Max"* Von Guaita. But one witness swore that the name of this partner was "Max," and he upon further consideration testified that he "was puzzled as to what the name of the said Von Guaita was, and could not say positively whether it was Matt or Max." Two witnesses, each of whom had had extensive dealings with the firm of G. H. Mumm & Co., the one as attorney and the other as a dealer in wines, testified that they understood the name of this partner to be Matt Von Guaita. The objection that the evidence of these two witnesses is hearsay is not well taken. The firm of G. H. Mumm & Co. is a foreign partnership, and proof of the names of the persons composing it may be made by proof of reputation. People v. Ah Sam, 41 Cal. 651; 2 Bish. New Crim. Prac., sec. 469.

The contention that as the indictment charges the unlawful sale of "goods, wares and merchandise, to-wit: twenty-four bottles," etc., and not of wine, there is a variance, is not well taken. The real charge is that the defendant sold the goods contained in these bottles under false labels. Counsel for defendant admits in his brief that "the evidence if it proves anything, proves that the contents of the bottles was not genuine Mumm's champagne." The proof further shows that the labels on these bottles were false and counterfeit.

By Chapter 140 Revised Statutes, in substance, it is provided: that any person who has adopted and used any label for the purpose of designating his goods may file with the Secretary of State a written description of the same, verified by affidavit; that said Secretary shall deliver to such person as many duly certified copies of such label as he shall apply for; and that in prosecutions under the act such certified copy shall be sufficient proof of the

adoption of such label. The certified copy of registration of the label of G. H. Mumm & Co. offered by the People is in substantial compliance with the statute and was properly admitted in evidence.

The trial court did not err in excluding the bill of complaint brought from the Circuit Court of the United States and offered by the defendant, in which bill the name of one Von Guaita is written "Max Von Guaita." The offer was not accompanied by evidence nor by the offer of evidence tending to prove that the parties named in this bill filed in May, 1895, were the same parties mentioned in the indictment found in November, 1903; or that such bill was filed by authority of the persons designated therein as complainants.

Peter Schneider, a witness called for the defendant, testified that he took the five cases of wine from the place of business of the defendant and delivered them to the Otto Schmidt Wine Co., and that at a prior date he had seen these same cases at Schott's place of business. The offer was then made by the defendant to show by this witness that he brought these same cases and other similar cases from Schott's premises to the store of the defendant. The court held this offer incompetent. We do not think this ruling constitutes reversible error. Whatever the fact may be, defendant was not charged with the manufacture of these goods or of the labels affixed to the bottles in which they were contained. The charge is that he unlawfully sold these goods in bottles to each of which a false label was affixed. Even if it be said that such evidence was admissible, it ought not to reverse this case, because the whole evidence tends strongly to show the guilt of the defendant, the rule being that where substantial justice has been done, an appellate tribunal will not reverse the judgment even though slight errors were committed on the trial. "Where the result reached by a judgment is clearly right, it will not be reversed for errors which do not affect the substantial merits of the case." Wilson v. People, 94 Ill. 327. See also Leigh v. Hodges, 3 Scam. 15; Zimm v. People, 111 Ill.

52; Ochs v. People, 124 Ill. 399; W. C. St. Ry. Co. v. Maday, 188 Ill. 310; Chicago v. Jackson, 196 Ill. 511.

The court gave to the jury 21 instructions, which fully cover the issues raised in this case. The defendant complains that 19 instructions tendered by him were not given. We have examined these refused instructions, and have compared them with those given, and we find that in such refusal the trial court did not commit reversible error.

The defendant also urges that his counsel was not given by the trial judge a reasonable time in which to prepare to argue the motion for a new trial. In theory a trial is a continuous proceeding from the time the first juror is called into the box until the judgment or sentence of the court is announced. In practice it is usual to grant an interval of time between the rendition of the verdict and the argument of the motion for a new trial; but we are not aware of any rule or custom of the court which calls upon the trial judge to do so, when his mind is fully made up as to the proper disposition of the case. The manner in which a trial shall proceed is so largely within the discretion of the presiding judge, that we cannot interfere with his conduct in that regard unless we find from an examination of the record that thereby the party complaining was prejudiced. We think there is no substantial ground for complaint in this objection.

The judgment of the Criminal Court is affirmed.

*Affirmed.*